UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X

ALEAH HOLLAND,

                Plaintiff,

-against-

ESTHER M. MORGENSTERN, THE CHILDREN'S LAW CENTER, GENEVIEVE TAHANG-BEHAN, ESQ., THE CITY OF NEW YORK, THE NEW YORK CITY ADMINISTRATION FOR CHILDREN'S SERVICES, RONALD E. RICHTER, PETER HARTLEY, STACEY ROBINSON, MALIKA KHALSA, SAMANTHA GRANT, INGRID WILLIAMS, MICHAEL CHUKWU, CHRISTINE THEODORE, ESQ., HOWARD COLLINS, Sr., GRACIELA ALEXANDER a/k/a LADY LA LOCA,

                Defendants.

------------------------------------------------------------------ X

12-CV-4870 (ARR)(VVP)

NOT FOR ELECTRONIC
OR PRINT PUBLICATION

OPINION AND ORDER

ROSS, United States District Judge:

    Plaintiff Aleah Holland brings this pro se action pursuant to 42 U.S.C. § 1983, alleging violations of her constitutional rights stemming from custody proceedings held in the Integrated Domestic Violence Part, Supreme Court of New York, Kings County ("IDV court"), before the Hon. Justice Esther M. Morgenstern. Defendants Justice Morgenstern, Genevieve Tahang-Behan ("Tahang-Behan"), the Children's Law Center ("CLC"), Christine Theodore, Esq. ("Theodore"), and the defendants represented by the City have all moved to dismiss the case. Defendants Howard Collins, Sr., and Graciela Alexander, a/k/a Lady La Loca, have not responded. The court has reviewed the grounds for dismissal set forth in the combined motions, and, for the

1

reasons explained below, grants the motions. The court also, sua sponte, dismisses the claims against the other defendants pursuant to 28 U.S.C. § 1915A(b)(1).

## BACKGROUND

This case arises from a custody battle between plaintiff and defendant Howard Collins, Sr. ("Collins"), over their four-year-old son, Howard Jr. See generally Compl. Justice Morgenstern presided over the case. Id. ¶ 32, 34, 52. Theodore represented Collins in the IDV court hearings, id. ¶ 44, and CLC, through their attorney Tahang-Behan, represented Howard Jr., id. ¶ 72-74, 77. Plaintiff was initially represented by Louisa Floyd. Pl.'s Resp. Mot., Ex. 9.[1]

At a hearing on December 12, 2011, Tahang-Behan reported an allegation by caseworkers at the New York City Administration for Children's Services ("ACS") that Howard Jr. was reported holding a gun in plaintiff's home. Id., Ex. 11, at 4. Plaintiff denied this allegation and stated that ACS had already been to her home to investigate six times. Id. At this hearing, Louisa Floyd also indicated that plaintiff wished to have her relieved and new counsel substituted. Id. at 2. The IDV court declined to appoint a new lawyer, but told plaintiff she could hire any lawyer she would like to represent her. Id. at 3.

On December 22, 2011, the IDV court received drug tests from plaintiff and Collins, showing Collins tested positive for marijuana. Id., Ex. 9, at 3. Nevertheless, the court awarded temporary custody of Howard Jr. to Collins and suspended plaintiff's visitation rights pending a report on whether plaintiff had a gun in her home. Id. at 5, 7.

---

[1] In addition to the allegations set forth in the complaint, the court takes judicial notice of the transcripts attached to plaintiff's response papers. See Pelosi v. Spota, 607 F. Supp. 2d 366, 371-72 (E.D.N.Y. 2009) (taking judicial notice of transcript from state court proceeding).

2

At a hearing on April 18, 2012, plaintiff appeared without counsel. Id., Ex. 14, at 2. The IDV court urged her to bring a lawyer to the next hearing. Id. at 5.

At a hearing on May 9, 2012, plaintiff again appeared without counsel. Id., Ex. 13. Theodore stated, "With respect to Miss Holland's application for counsel, she did state on the record she does have a major book deal and showed assets of $800,000." Id. at 3. Justice Morgenstern responded, "I have no idea. I know what she told ACS. She is a nurse. She has employment." Id. Plaintiff responded that these were false statements made by ACS. Id. The subsequent colloquy in that hearing indicates that, at that point, Collins and plaintiff were sharing custody of Howard Jr. See id. at 5-6 ("THE COURT: What is his current visitation? MS. THEODORE: Your Honor, it is from Monday to Thursday. And mother has them from Thursday to Monday. . . . MS. HOLLAND: . . . I prefer if he only has him on weekends."). Theodore also reported to the court that plaintiff had called in a complaint to ACS stating that Howard Jr. had suffered burns to his feet while in his father's custody, and ACS had been to Collins' house to investigate the claim. Id. at 5. Justice Morgenstern ordered that Howard Jr. be produced to his law guardian and that ACS provide an update. Id. Justice Morgenstern continued her previous orders and again urged plaintiff to obtain counsel. Id. at 7.

Plaintiff failed to appear at a hearing on July 18, 2012. Id., Ex. 15, at 2. At that hearing Collins alleged that on December 25, 2010, plaintiff tried to hit him with a car. Id. at 3. As a result, the IDV court entered an order of protection against plaintiff. Id. The court extended its prior order of visitation, whereby, according to Theodore, the parents split custody weekly. Id. at 6.

At the next hearing, on August 6, 2012, plaintiff again did not appear. Id., Ex. 17, at 2. Justice Morgenstern issued a warrant for plaintiff's arrest. Id. at 3. The visitation schedule of Collins having custody from Monday to Thursday remained in place. Id. at 4.

On August 15, 2012, plaintiff again did not appear at a hearing. Id., Ex. 10, at 3-4. Collins reported he had not seen his son in two months. Id. at 2. Justice Morgenstern continued the arrest warrant for plaintiff and granted Collins temporary custody of Howard Jr. Id. at 4.

Plaintiff finally did appear at a hearing on August 21, 2012, before the Hon. Patricia E. Henry. Id., Ex. 16. Justice Henry assigned plaintiff new counsel and continued Justice Morgenstern's orders then in effect. Id. at 7-8. Plaintiff stated she wanted Justice Morgenstern recused from the case. Id. at 8. Justice Henry adjourned the case to September 19, id. at 7, though no hearing for that date appears in the record.

The instant lawsuit was filed on September 28, 2012. Dkt. #1, at 1.

The next hearing in the record took place on October 18, 2012. Id., Ex. 18. Plaintiff appeared without counsel. Id. at 3. Justice Morgenstern denied plaintiff's motion for recusal. Id. Plaintiff informed the court that she had filed a case against Justice Morgenstern in federal court. Id. at 3. Justice Morgenstern told plaintiff that she should file an appeal with the Appellate Division if plaintiff wished to have the IDV court's rulings reviewed. Id. at 5. Plaintiff responded, "You're corrupt and you need to be removed off the bench." Id. The court then held an afternoon session with Collins, id. at 7-14, at the end of which, the transcript indicates, the case was adjourned to November 7, 2012, id. at 14.

Defendants now move to dismiss plaintiff's case pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## DISCUSSION

I. *Standard of Review*

To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Although still subject to the facial probability standard, a pro se complaint must be construed liberally and is held to less stringent standards than pleadings drafted by lawyers. Erickson v. Pardus, 551 U.S. 89, 94 (2007); see Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996). Nevertheless, pro se plaintiffs are not excused from the normal rules of pleading and "dismissal under Rule 12(b)(6) is proper if the complaint lacks an allegation regarding an element necessary to obtain relief." Geldzahler v. N.Y. Med. College, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (quoting 2 James Wm. Moore et al., Moore's Fed. Practice § 12.34[4][a] at 12–72.7 (3d ed. 2005)).

II. *Plaintiff's Claims*

Plaintiff charges that the defendants conspired to cover up abuse by Collins, failed to protect Howard, Jr., and intimidated plaintiff and her children. Compl. ¶¶ 44, 68-69, 72-73.[2] She

---

[2]At times in her complaint, plaintiff appears to speak on behalf of herself and her children, see, e.g., Compl. ¶ 117; however, because plaintiff is pro se, she can only represent herself. See Iannaccone v. Law, 142 F.3d 553, 558 (2d Cir. 1998) ("[B]ecause pro se means to appear for one's self, a person may not appear on another person's behalf in the other's cause."); Rodriguez v. Jaddie Stewart Agency, Inc., No. 08-CV-0046 (JFB)(AKT), 2009 WL 212123, at *4 (E.D.N.Y. Jan. 28, 2009) ("[I]t is axiomatic that a pro se plaintiff can only represent himself and may not appear on someone else's behalf.").

5

specifically complains that Justice Morgenstern refused to appoint counsel for her based on a "false reason," id. ¶ 91, and that she "misuse[d] Legal techniques, broke the rules, broke the laws, favored the other party, and allowed crimes to be committed . . . in her courtroom," id. ¶ 99. She alleges, "The actions of all the individual defendants, under their official oath of office, acting within the scope of their employment with the City of New York, deprived Plaintiffs of their rights under [the] First, Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution." Id. ¶ 105. She also alleges state law claims of malicious prosecution, "[f]alse [c]onviction," id. at 16, abuse of process, intentional infliction of emotional distress, and negligence. Id. ¶¶ 127-45. Plaintiff seeks compensatory damages in the amount of $999,999,999,999,999.00, punitive damages, and an injunction barring Justice Morgenstern and Tahang-Behan from practicing law.

The court understands that plaintiff is frustrated with the process in the IDV court and sympathizes with her separation from her child. However, as will be explained below, plaintiff cannot obtain the remedies she seeks in federal court. As of the filing of this case, the IDV court had awarded only <u>temporary</u> custody of Howard Jr. to Collins. Accordingly, plaintiff still had opportunities to regain her partial custody (or seek full custody) in the IDV court at that time.[3] If plaintiff is dissatisfied with the IDV court's final rulings, she may appeal as of right to the

---

[3] In an affidavit attached to the CLC and Tahang-Behan's reply memorandum of law, Martha Schneiderman, an attorney for the CLC, states that on January 10, 2013, plaintiff failed to appear for a scheduled court appearance, and the court entered a final order granting custody of Howard Jr. to Collins, based on plaintiff's default. See Dkt. #23, at 8.

6

Appellate Division. See N.Y. C.P.L.R. § 5701(a). But this court is unable to grant plaintiff relief against the various defendants for the following reasons:[4]

a. Justice Morgenstern

Plaintiff's claims for damages against Justice Morgenstern are barred by absolute judicial immunity. "[J]udges generally have absolute immunity from suits for money damages for their judicial actions," Bliven v. Hunt, 579 F.3d 204, 209 (2d Cir. 2009), unless they "acted in the clear absence of all jurisdiction," Huminski v. Corsones, 396 F.3d 53, 75 (2d Cir. 2005) (internal quotation marks omitted), or "if the action in question is not judicial in nature, as when the judge performs an administrative, legislative, or executive act," id. "[E]ven allegations of bad faith or

---

[4]The defendants all argue that this court cannot or should not exercise jurisdiction over plaintiffs' claims. They base their arguments variously on the Rooker-Feldman doctrine, the domestic relations exception to federal jurisdiction, and Younger abstention. However, these principles do not bar review of most of plaintiff's claims. See generally, McKnight v. Middleton, 699 F. Supp. 2d 507, 514-21 (E.D.N.Y. 2010) (applying doctrines to similar case). The Rooker-Feldman doctrine applies only in "'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" Green v. Mattingly, 585 F.3d 97, 101 (2d Cir. 2009) (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 554 U.S. 280, 284 (2005)). Since there had been no final judgment of the state court when this case was filed, and plaintiff does not seek district court review and rejection of a final judgment, the Rooker-Feldman doctrine does not apply. See id., at 102-103 (rejecting application of Rooker-Feldman to suit alleging constitutional violation against ACS for removing child from mother's custody). The domestic relations exception to federal jurisdiction similarly does not apply because plaintiff does not seek a child custody decree from this court. See Ankenbrandt v. Richards, 504 U.S. 689, 704 (1992) (holding domestic relations exception does not apply where "lawsuit in no way seeks" a divorce, alimony, or child custody decree). Finally, abstention under Younger v. Harris, 401 U.S. 37 (1971), is unwarranted with respect to plaintiff's claims for damages because the Second Circuit has held that "application of the Younger doctrine is inappropriate where the litigant seeks money damages for an alleged violation of § 1983." Rivers v. McLeod, 252 F.3d 99, 101-02 (2d Cir. 2001). Younger abstention might apply to plaintiff's claims for injunctive relief. See McKnight, 699 F. Supp. 2d at 520-21. However, as will be discussed below, the court need not reach that question since the injunctive relief plaintiff seeks must be denied for other reasons.

7

malice cannot overcome judicial immunity." Bliven, 579 F.3d at 209. "In addition, as amended in 1996, § 1983 provides that 'in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.'" Id. (quoting 42 U.S.C. § 1983).

Plaintiff has appended to her responsive pleading several pages of headnotes that the court construes as an argument that Justice Morgenstern acted in a clear absence of jurisdiction. This argument, however, is misplaced. Jurisdiction is "'clearly absent'" when "'no reasonable person would have thought jurisdiction proper.'" McKnight, 699 F. Supp. 2d at 523 (quoting Maestri v. Jutkofsky, 860 F.2d 50, 53 (2d Cir. 1988)). The Supreme Court has held that "a judge will not be deprived of immunity because the action [s]he took was in error, was done maliciously, or was in excess of his authority; rather, [s]he will be subject to liability only when [s]he has acted in the clear absence of all jurisdiction." Stump v. Sparkman, 435 U.S. 349, 356-57 (1978) (emphasis added). Here, Justice Morgenstern clearly had jurisdiction over plaintiff's case under the general jurisdiction possessed by the Supreme Court under New York law. See N.Y. Judiciary Law § 140-b. Further, plaintiff concedes that Justice Morgenstern was acting "under [her] official oath of office . . . [and] within the scope of [her] employment." Compl. ¶ 105.

Even if Justice Morgenstern acted outside the scope of her authority in making a particular ruling, Supreme Court precedent makes clear she would still retain absolute judicial immunity. Stump, 435 U.S. at 356-57. Plaintiff may disagree with Justice Morgenstern's rulings, but the propriety of those rulings (about which this court makes no determination) does

not affect her absolute immunity where there is no question as to her subject matter jurisdiction over the case. See McKnight, 699 F. Supp. 2d at 524. Moreover, since Justice Morgenstern did not violate any declaratory decree, plaintiff is not entitled to injunctive relief against her. Id. at 525 (citing amendments to § 1983). Nor is it this court's role to determine who may or may not practice law in the state of New York. The authority to discipline attorneys rests in the exclusive jurisdiction of the Appellate Division. See Matter of Hyatt Legal Servs., 468 N.Y.S.2d 778, 778 (App. Div. 1983) ("The Judiciary Law invests in the Appellate Division exclusive jurisdiction to discipline attorneys admitted to practice law in New York . . . ."). This court does not have the authority to grant the injunctive relief that plaintiff seeks.

Accordingly, Justice Morgenstern is dismissed from the case.

b. CLC and Tahang-Behan

The CLC and Tahang-Behan are also immune from suit based on absolute, quasi-judicial immunity. Absolute immunity may attach to a non-judicial officer where that individual serves as an "arm of the court," Scotto v. Almenas, 143 F.3d 105, 111 (2d Cir. 1998), or acts as an "integral part[] of the judicial process," Briscoe v. LaHue, 460 U.S. 325, 335 (1983). "[I]mmunity will not attach where an individual acted under her own initiative rather than 'at the initiative of the court.'" McKnight, 699 F. Supp. 2d at 527 (quoting Scotto, 143 F.3d at 111). The Third Circuit has applied this principle in the context of court-appointed law guardians in custody cases, and has held such guardians are absolutely immune from suit. Gardner by Gardner v. Parson, 874 F.2d 131, 146 (3d Cir. 1989). This Circuit has endorsed quasi-judicial absolute immunity for law guardians in a recent summary order. Yapi v. Kondratyeva, 340

F. App'x 683, 685 (2d Cir. 2009).⁵ Here, the CLC, through its attorney Tahang-Behan, acted as a law guardian representing the interests of Howard, Jr. Compl. ¶ 21. Like Justice Morgenstern, petitioner concedes that these defendants acted "within the scope of their employment." Compl. ¶ 105. Further, they were appointed by the court and were not acting "under [their] own initiative." McKnight, 699 F. Supp. 2d at 527 (internal quotation marks omitted). Finally, the court lacks jurisdiction to bar Tahang-Behan from practicing law, as discussed above.

Accordingly, the CLC and Tahang-Behan are immune from suit and are dismissed from the case.

    c.    <u>Theodore, Collins, and Graciela Alexander, a/k/a Lady La Loca</u>

Plaintiff also names Theodore, Collins, and Collins' mother, Graciela Alexander, a/k/a Lady La Loca ("Alexander"), as defendants. The claims against these individuals must fail because the defendants are private citizens not subject to § 1983 liability. See Ciambriello v. Cnty. of Nassau, 292 F.3d 307, 323-24 (2d Cir. 2002) ("In order to state a claim under § 1983, a plaintiff must allege that he was injured by either a state actor or a private party acting under color of state law."). Although "[a] private individual may be subject to liability under this section if he or she willfully collaborated with an official state actor in the deprivation of the federal right," Dwares v. City of N.Y., 985 F.2d 94, 98 (2d Cir. 1993), <u>overruled on other grounds by</u> Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163 (1993), plaintiff alleges no collaboration between Collins, Alexander, and the state actor defendants. She makes a conclusory allegation of a conspiracy between Theodore and the state

---

⁵Numerous district courts in this Circuit have also held that law guardians are not state actors, and thus cannot be held liable under § 1983. See Lewittes v. Lobis, No. 04 Civ.0155JSRAJP, 2004 WL 1854082, at *12 n.13 (S.D.N.Y. Aug. 19, 2004) (collecting cases).

actor defendants, Compl. ¶ 44, but fails to allege any facts that would establish collaboration between these individuals, see Ciambriello, 292 F.3d at 324. A conspiracy of a private actor with state actors can form the basis for a § 1983 claim even when the state actors are absolutely immune from suit, see Polur v. Raffe, 912 F.2d 52, 56 (2d Cir. 1990) (citing Dennis v. Sparks, 449 U.S. 24, 27 (1980)), but "merely resorting to the courts and being on the winning side of a lawsuit does not make a [private] party a co-conspirator or a joint actor with the judge." Dennis, 449 U.S. at 28; see also Polk Cnty. v. Dodson, 454 U.S. 312, 318-20 (1981) (holding public defenders are not acting under color of law pursuant to § 1983 when representing clients in criminal cases). Merely claiming a conspiracy between an attorney and officers of the court, without specific factual allegations to support such a claim, cf. Dennis, 449 U.S. at 28-29, is insufficient to establish liability under § 1983. See Polur, 912 F.2d at 56 ("It is incumbent on a plaintiff to state more than conclusory allegations to avoid dismissal of a claim predicated on a conspiracy to deprive him of his constitutional rights."); Sash v. Rosahn, No. 08 cv 4032(BSJ)(HP), 2009 WL 1683877, at *1 n.3 (S.D.N.Y. June 16, 2009); Frierson-Harris v. Hough, No. 05 Civ. 3077(DLC), 2006 WL 298658, at *4 (S.D.N.Y. Feb. 7, 2006). Accordingly, plaintiff fails to state a claim against these private individuals.

    d.    City Defendants

Defendants the City of New York, ACS, Ronald E. Richter, Peter Hartley, Stacey Robinson, Malike Khalso, Samantha Grant, Ingrid Williams, and Michael Chukwu ("City defendants") collectively filed a notice of motion to dismiss and sent plaintiff a proposed briefing schedule on April 7, 2013. Dkt. #30. Plaintiff did not respond by the City defendants' proposed date of May 3, 2013. Id. at 2. The City defendants thereafter filed their motion with the court on

11

the proposed return date of May 10, 2013. Id. at 1. The court considers the motion fully briefed and will apply the arguments made in plaintiff's prior opposition papers to the City defendants' motion.

1. Failure to Protect

Plaintiff's allegation against the City defendants is primarily (with one specific exception discussed below) that they failed to protect Howard Jr. from abuse by Collins and Alexander. See Compl. ¶¶ 37 (City defendants "downplayed abuse"), 39 (failed "to document abuse"), 42 ("failed to protect Howard Jr."), 43 ("FAILED to put Safety Restrictions on [Collins] and endangered the lives of Plaintiff['s] children"), 74 ("No action to protect Howard Jr. was ever taken" by ACS); see also id. ¶ 113. However, a failure to protect, by itself, is not a violation of constitutional rights. The Supreme Court has explicitly held that the Due Process Clause of the Fourteenth Amendment does not require "the State to protect the life, liberty, and property of its citizens against invasion by private actors." DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 195 (1989). The purpose of the Clause "was to protect the people from the State, not to ensure that the State protected them from each other." Id. at 196. Therefore, "[a]s a general matter, . . . a State's failure to protect and individual against private violence simply does not constitute a violation of the Due Process Clause." Id. at 197.

Similar to this case, DeShaney dealt with social workers' failure to remove a child from the custody of his abusive father. Id. at 192-93. The social workers in that case received repeated reports about abuse, which they recorded, but they failed to take any action to remove the child. Id. After the child's father beat him so severely that he fell into a life-threatening coma and suffered permanent brain damage, the child's mother brought suit on his behalf under §

12

1983. Id. at 193. The Supreme Court held that while the facts of the case were "undeniably tragic," id. at 191, the failure to protect the child did not violate his constitutional rights. Id. at 201-02 (noting that a remedy might nevertheless be available under state tort law). The Court reaffirmed its holding in DeShaney more recently in Town of Castle Rock, Colo. v. Gonzales, 545 U.S. 748 (2005), which held that plaintiff did not have a constitutional claim stemming from the police's failure to enforce a restraining order against her husband. Id. at 768-69.

The Second Circuit has read DeShaney to imply that "though an allegation simply that police officers had failed to act upon reports of past violence would not implicate the victim's rights under the Due Process Clause, an allegation that [the state actors] had assisted in creating or increasing the danger to the victim would indeed implicate those rights." Dwares, 985 F.2d at 99; accord Jing Gan v. City of N.Y., 996 F.2d 522, 533 (2d Cir. 1993) ("[I]n exceptional circumstances a governmental entity may have a constitutional obligation to provide . . . protection . . . because the governmental entity itself has created or increased the danger to the individual."). In Dwares, the Circuit held that DeShaney did not shield police officers from § 1983 liability where the officers communicated to "skinheads" that they would not be arrested or otherwise interfered with for assaulting flag-burners "unless they got completely out of control." 985 F.2d at 96-97. The Dwares court held that this "prearranged official sanction of privately inflicted injury," id. at 99, was a violation of the victim's rights under the Due Process Clause.

The Circuit has applied Dwares in multiple contexts. In Hemphill v. Schott, 141 F.3d 412 (2d Cir. 1998), the Circuit held that police officers who returned a firearm to a robbery victim, and then drove the victim to the scene of the robber's arrest (where the victim then shot the robber) were liable for a state-created danger arising when a "state actor aids and abets a

13

private party in subjecting a citizen to unwarranted physical harm." Id. at 418. In Pena v. DePrisco, 432 F.3d 98 (2d Cir. 2005), the Circuit held that police officers who implicitly encouraged a fellow officer to drive drunk while off duty were liable to family members of pedestrians who were killed by the officer. Id. at 110-11. The Circuit drew a distinction between officers who "stood by and did nothing" id. at 110, who were not liable solely for their "failure to interfere," id., and those who "told, or otherwise communicated to, Officer Grey that he could drink excessively and drive while intoxicated without fear of punishment," id. at 111. The court noted that "prior assurances of impunity" communicated "implicitly" could be sufficient to allege a constitutional violation, since "[s]ometimes deliberate silence is equivalent to explicit permission." Id. at 112. The Circuit has since characterized Pena as holding that repeated, sustained inaction can constitute such a "prior assurance" and rise "to the level of an affirmative condoning of private violence, even if there is no explicit approval or encouragement." Okin v. Vill. of Cornwall-On-Hudson Police Dep't, 577 F.3d 415, 428 (2d Cir. 2009) (citing Pena, 432 F.3d at 111).

Here, plaintiff alleges that ACS caseworker Stacey Robinson "falsified documents . . . , lied, backdated documents, and stated there is no problem with illegal drug [use]," Compl. ¶ 36, and that she, Samantha Grant, and Malika Khalsa "all falsified documents, downplayed abuse . . . , and acted in misconduct [sic]," id. ¶ 37. The court construes these allegations as claims that the ACS caseworkers took affirmative acts that created or increased the danger of abuse to Howard Jr., and such acts amounted to "active" rather than "passive" facilitation of the abuse. Pena, 432 F.3d at 110.

However, even so construing the complaint, the allegations fall short of stating a claim for a Due Process Clause violation.[6] As the Circuit has recently explained, "The affirmative conduct of a government official may give rise to an actionable due process violation <u>if it communicates, explicitly or implicitly, official sanction of private violence</u>." Okin, 577 F.3d at 429 (emphasis added). Here, plaintiff alleges that the ACS caseworkers covered up past abuse, but does not allege that such acts communicated to Collins or Alexander that future abuse was condoned. In fact, there is no allegation of any direct communication between the ACS caseworkers and Collins or Alexander. Instead, plaintiff's submissions make clear that the caseworkers investigated allegations of abuse, the allegations were reported to Justice Morgenstern, and she ordered further investigation. See, e.g., Pl.'s Resp. Mot., Ex. 13, at 5-6. These facts do not support a claim that the City defendants communicated "prior assurances of impunity," Pena, 432 F.3d at 112, to Collins and Alexander, even implicitly. "This communication gap is a critical missing link between the danger [plaintiff] claims [Howard Jr.] faced and the state's responsibility for creating it." Chambers v. N. Rockland Cent. Sch. Dist., 815 F. Supp. 2d 753, 767 (S.D.N.Y. 2011). Plaintiff's complaint presents strong dissatisfaction with Justice Morgenstern's rulings based on reports from the City defendants. But it does not adequately allege that repeated, sustained inaction by the City defendants communicated to Collins and Alexander that they could continue to abuse Howard Jr. without consequences. "At worst, [the City defendants'] actions were insufficient to prevent the danger, thus placing this

---

[6]The Circuit's case law also requires that the acts in question be so extreme that they "shock the contemporary conscience." Pena, 432 F.3d at 112 (internal quotation marks omitted). However, since I find that the claim does not meet the Circuit's exception to DeShaney, I do not address this issue.

15

case squarely within the ambit of DeShaney." Id. at 769. Accordingly, the complaint fails to state a constitutional claim against the City defendants.

    2.    Additional Claims Against Stacey Robinson

In addition to her claim of failure to protect, plaintiff alleges that caseworker Stacey Robinson "screamed, yelled and ridiculed Plaintiff," Compl. ¶ 38, and "harrass[ed]" plaintiff "with unwanted unnecessary calls, and unannounced pop up visits at their home," id. ¶ 41. These claims do not rise to the level of a constitutional violation. See Jean-Laurent v. Wilkerson, 438 F. Supp. 2d 318, 324-25 (S.D.N.Y. 2006) (claim of verbal abuse not cognizable under § 1983 because verbal intimidation did not rise to the level of a constitutional violation); Ramirez v. Holmes, 921 F. Supp. 204, 210 (S.D.N.Y. 1996) (threats and verbal harassment without physical injury or damage not cognizable in claim filed under § 1983); Fairchild, Arabatzis & Smith, Inc. v. Sackhheim, 451 F. Supp. 1189, 1192 (S.D.N.Y. 1978) ("screaming" and "demanding" did not rise to the level of constitutional violation). Accordingly, these allegations do not support a constitutional claim against Robinson individually.

    e.    State law claims

Because I dismiss plaintiff's federal claims, I decline to exercise supplemental jurisdiction over her state law claims. 28 U.S.C. § 1367(c); see Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988) ("[W]hen the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice."); Marcus v. AT&T Corp., 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed . . . the state claims should be

dismissed as well."); Johnson v. City of N.Y., 09 CIV. 4685 PGG, 2011 WL 1044852, at *13 (S.D.N.Y. Mar. 18, 2011); Warren v. Fischl, 33 F. Supp. 2d 171, 178 (E.D.N.Y. 1999).

## CONCLUSION

For the foregoing reasons, the motions to dismiss are granted. The claims against Justice Morgenstern, the CLC, and Tahang-Behan are dismissed with prejudice. The claims against Theodore, Collins, Alexander, and the City defendants are dismissed without prejudice. Should plaintiff wish to replead her claims against these defendants, plaintiff is afforded thirty days to amend her complaint.

Plaintiff is advised that the amended complaint will completely replace the complaint, and that she should include in it all of the information and facts she alleged in her original complaint. The amended complaint must be captioned "Amended Complaint" and bear the same docket number as this order. Once submitted, the amended complaint will be reviewed for compliance with this order and for sufficiency under Federal Rules of Civil Procedure 8 and 12(h)(3) and 28 U.S.C. § 1915(e)(2)(B).

Plaintiff is reminded, however, that to the extent she wishes to challenge the rulings of the IDV court, the proper forum is the Supreme Court of New York, Appellate Division.

If plaintiff fails to replead within thirty days, the complaint shall be dismissed with prejudice and judgment will enter.

The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith; therefore, in forma pauperis status is denied for purpose of an

appeal. <u>Coppedge v. United States</u>, 369 U.S. 438, 444-45 (1962).

    SO ORDERED.

/S/ Allyne R. Ross

Allyne R. Ross
United States District Judge

Dated: May 20, 2013
       Brooklyn, New York

**Service List:**

Aleah Holland
P.O. Box 100025
Brooklyn, NY 11210